# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 10, 2011            Decided August 5, 2011

No. 10-5349

JUDICIAL WATCH, INC.,
APPELLANT

v.

FEDERAL HOUSING FINANCE AGENCY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-01537)

———

*James F. Peterson* argued the cause for appellant. With him on the brief was *Paul J. Orfanedes*.

*Mark R. Freeman*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Tony West*, Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, and *Mark B. Stern*, Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: TATEL and GRIFFITH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: The Federal Housing Finance Agency (FHFA) has been the conservator of Fannie Mae and Freddie Mac since 2008. Judicial Watch filed a request under the Freedom of Information Act (FOIA) asking the FHFA to disclose records of Fannie and Freddie that show how much money they gave to political campaigns. But it is uncontested that no one at the FHFA has ever read or relied upon any such documents. The district court held that the documents are not agency records subject to FOIA, and we agree.

I

The Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac) buy residential mortgages from banks, repackage them for sale as mortgage-backed securities, and guarantee these securities by promising to make investors whole if borrowers default. CONG. BUDGET OFFICE, FANNIE MAE, FREDDIE MAC, AND THE FEDERAL ROLE IN THE SECONDARY MORTGAGE MARKET viii (2010). Both firms are structured as private corporations, but they are federally chartered and play an important role in the national housing market by making it easier for home buyers to obtain loans. *See* 12 U.S.C. §§ 1452(a), 1723(b). In 2009, the two companies guaranteed three-quarters of new residential mortgages in the United States. CONG. BUDGET OFFICE, *supra*, at iii.

National housing prices began a sustained decline in 2006 that by mid-2008 had substantially eroded the value of Fannie- and Freddie-held mortgages. Worried that either or both Fannie and Freddie might become insolvent, Congress passed the Housing and Economic Recovery Act of 2008 (HERA), Pub. L. No. 110-289, 122 Stat. 2654, which created

the FHFA and authorized this new agency to place the two companies into conservatorship under specified circumstances. *See* 12 U.S.C. § 4511 (creating the FHFA); *id.* § 4617 (authorizing the FHFA to place either company into conservatorship in various scenarios, including where the firm's assets are insufficient to meet its obligations and where the firm's management consents to a conservatorship). On September 7, 2008, with the consent of management at Fannie and Freddie, the FHFA placed both into conservatorship. As conservator, the FHFA has power to exercise "all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity." *Id.* § 4617(b)(2)(A)(i).

Judicial Watch asked the FHFA to disclose "[a]ny and all Freddie Mac . . . or Fannie Mae records concerning political campaign contributions," Letter from Judicial Watch to FHFA (May 29, 2009), and it sued when the agency refused. FOIA gives federal courts jurisdiction "to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). But under FOIA, a federal court may only order an agency to release "agency records." *Id.*; *see U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989). Judicial Watch acknowledges that Fannie and Freddie are not themselves subject to FOIA, but argues that the requested documents became "agency records" when the FHFA took over as conservator.

In its motion for summary judgment, the FHFA acknowledged that it had access to responsive documents, but, in an accompanying affidavit, swore that no one at the agency had ever read them. Decl. of David A. Felt, Deputy Gen. Counsel, FHFA 3. The FHFA argued that until someone at the agency uses the requested documents, they cannot be "agency

records" for purposes of FOIA. The district court agreed and granted summary judgment for the agency. *Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 744 F. Supp. 2d 228 (D.D.C. 2010). We take jurisdiction to hear Judicial Watch's appeal under 28 U.S.C. § 1291 and affirm the judgment of the district court.

II

The Supreme Court has held that FOIA reaches only records the agency controls at the time of the request. *Tax Analysts*, 492 U.S. at 144-45. Control means "the materials have come into the agency's possession in the legitimate conduct of its official duties." *Id.* We look to four factors to determine whether an agency controls a document:

> (1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.

*Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (citation omitted). The district court considered these factors and determined that the FHFA does not "control" the documents Judicial Watch requested because the agency had neither used the documents nor integrated them into its files. *Judicial Watch*, 744 F. Supp. 2d at 235. We agree.

As a threshold matter, Judicial Watch argues that the FHFA controls the documents because it holds title to them and that we therefore need not consider the *Burka* factors in

5

this case. *See* 12 U.S.C. § 4617(b)(2)(A)(i) (providing that as conservator the FHFA assumes "all rights, titles, powers, and privileges" of Fannie and Freddie). But our cases have never suggested that ownership means control. On the contrary, in *Consumer Federation of America v. Department of Agriculture*, we used the *Burka* test to conclude a document was not an "agency record" even though the agency had an arguable property interest in it. 455 F.3d 283, 293 (D.C. Cir. 2006). In that case, we held that electronic calendars kept by agency employees on their work computers were only subject to FOIA if they had been distributed widely within the agency. *Id.* at 290-93. Rather than asking whether the agency owned the calendars, we used the *Burka* factors to decide whether FOIA applied. And that is the inquiry we undertake here.

The first *Burka* factor instructs us to consider "the intent of the document's creator to retain or relinquish control over the records." *Burka*, 87 F.3d at 515. We agree with Judicial Watch that Fannie and Freddie, the creators of the documents, intentionally relinquished control over the records when they agreed to the conservatorship. This case is therefore unlike *Kissinger v. Reporters Committee for Freedom of the Press*, where the Supreme Court held that the private papers of the Secretary of State did not become subject to FOIA when he stored them in his State Department office without any thought that doing so might transform them into "agency records." 445 U.S. 136, 157 (1980). The documents Judicial Watch seeks were transferred to the FHFA with full knowledge that the agency might use them in the conduct of its official business.

The second *Burka* factor also supports Judicial Watch's claim, as there is no question that as the conservator of Fannie and Freddie, and the titleholder of their documents, the FHFA

enjoys "the ability . . . to use and dispose of the record[s] as it sees fit." *Burka*, 87 F.3d at 515. The FHFA does not dispute this point.

Although the first two *Burka* factors help Judicial Watch, the third is fatal to its claim. *Burka* instructs us to consider "the extent to which agency personnel have read or relied upon the document," *id.*, and here it is uncontested that the FHFA has not used the requested records in any way, Decl. of David A. Felt, Deputy Gen. Counsel, FHFA 3. The public cannot learn anything about agency decisionmaking from a document the agency neither created nor consulted, and requiring disclosure under these circumstances would do nothing to further FOIA's purpose of "open[ing] agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). In deciding whether an agency controls a document its employees created, we have consistently found that "use is the decisive factor." *Consumer Fed'n of Am.*, 455 F.3d at 288; *see also Gallant v. NLRB*, 26 F.3d 168, 172 (D.C. Cir. 1994) (holding that an agency official's personal correspondence was not subject to FOIA in part because of a "lack of reliance on the correspondence to carry out the business of the agency"); *Bureau of Nat'l Affairs, Inc. v. U.S. Dep't of Justice*, 742 F.2d 1484, 1490 (D.C. Cir. 1984) (observing that where a document is created by an agency employee and located at the agency, "use of the document becomes more important in determining the status of the document under FOIA"). We think use is decisive here as well. Although we appreciate Judicial Watch's interest in how much money Fannie and Freddie gave to which politicians in the years leading up to our current financial crisis, satisfying curiosity about the internal decisions of private companies is not the aim of FOIA, and there is no question that disclosure of the requested records would reveal nothing about decisionmaking at the FHFA. We therefore

hold that where an agency has neither created nor referenced a document in the "conduct of its official duties," *Tax Analysts*, 492 U.S. at 145, the agency has not exercised the degree of control required to subject the document to disclosure under FOIA.

The fourth *Burka* factor instructs us to consider "the degree to which the document was integrated into the agency's record system or files." *Burka*, 87 F.3d at 515. In this case, the degree is none at all. It goes without saying that an agency cannot integrate into its record system a document created by a third party that none of its employees have read, and as we have pointed out, it is the undisputed testimony of the FHFA's General Counsel that no one at the agency has relied upon these documents in any way. By directing us to look to the files an agency uses to make decisions, the fourth *Burka* factor confirms what the third factor teaches: a document that could not reveal anything about agency decisionmaking is not an "agency record."

Although there is no doubt that the FHFA could consult the requested records as it conducts its business, the problem for Judicial Watch is that no one from the FHFA has done so. The Supreme Court held in *Forsham v. Harris* that documents an agency had the right to acquire would not become agency records subject to FOIA "unless and until the right is exercised." 445 U.S. 169, 181 (1980). In the same way, the FHFA's unexercised right to use and dispose of the records requested in this case is not enough to subject those records to FOIA. In weighing the *Burka* factors, we are mindful that the "core purpose of the FOIA" is to "'contribut[e] significantly to public understanding *of the operations or activities of the government*.'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989) (quoting 5 U.S.C. § 552(a)(4)(A)(iii)).

The FHFA argues in the alternative that even if it "controls" the requested documents, they are not subject to disclosure because it has not "obtained" them. *See Tax Analysts*, 492 U.S. at 144-45 (holding that documents are only "agency records" within the meaning of FOIA if the agency both "create[s] or obtain[s]" the documents and "control[s]" them). Because we hold that the FHFA does not control the documents, we do not reach that argument.

## III

The judgment of the district court is

*Affirmed.*