# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 19, 2014        Decided May 23, 2014

No. 13-5127

CAUSE OF ACTION,
APPELLANT

v.

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01342)

*Daniel Epstein* and *Marie A. Connelly* argued the cause for appellant. On the brief were *Patrick J. Massari* and *Reed D. Rubinstein*.

*Christine N. Kohl*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Stuart F. Delery*, Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, and *Leonard Schaitman*, Attorney. *Edward Himmelfarb*, Attorney, entered an appearance.

*Kerry W. Kircher*, General Counsel, *William Pittard*, Deputy General Counsel, *Christine M. Davenport*, Senior Assistant Counsel, and *Todd B. Tatelman*, *Mary Beth Walker*, and *Eleni M. Roumel*, Assistant Counsel, were on the brief for

*amicus curiae* Bipartisan Legal Advisory Group of the United States House of Representatives.

Before: HENDERSON and KAVANAUGH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*:  This is an appeal from the judgment of the district court dismissing a complaint brought under the Freedom of Information Act, 5 U.S.C. § 552.  The complaint sought, from the National Archives, records of the Financial Crisis Inquiry Commission, a legislative branch agency charged with investigating "the causes, domestic and global, of the current financial and economic crisis in the United States."  Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 5(a), 123 Stat. 1617, 1625.

The Commission, established in 2009, was to report its findings and conclusions to Congress and the President on December 15, 2010, and then terminate 60 days later.  *Id.* § 5(h)–(i).[1]  Shortly before it disbanded, the Commission transferred its records to the National Archives and Records Administration.  The Archives accepted the records pursuant to its statutory authority to "accept for deposit with the National Archives of the United States the records of a Federal agency, the Congress, the Architect of the Capitol, or the Supreme Court" when the Archivist determines those records to have

---

[1] The Commission's Report was released to the public on January 27, 2011.  *See* Press Release, Fin. Crisis Inquiry Comm'n, Financial Crisis Inquiry Commission Releases Report on the Causes of the Financial Crisis (Jan. 27, 2011), *available at* http://fcic-static.law. stanford.edu/cdn_media/fcic-news/2011-0127-fcic-releases-report.pdf.

"sufficient historical or other value to warrant their continued preservation." 44 U.S.C. § 2107(1).[2]

FOIA requires most federal agencies to make their "agency records," 5 U.S.C. § 552(a)(4)(B), available to the public, subject to several exceptions. *See, e.g.*, *Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1261-62 (2011). "Agency," in the FOIA context, means "each authority of the Government of the United States," but the definition "does not include" Congress and certain other governmental entities, such as the "courts of the United States." 5 U.S.C. § 551(1). As a result, FOIA "does not cover congressional documents," *United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 597 (D.C. Cir. 2004), or documents of legislative branch agencies, *see Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994); *Ethnic Emps. of Library of Cong. v. Boorstin*, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985). The Financial Crisis Inquiry Commission, established in the legislative branch, was therefore not an "agency" subject to FOIA. *Cause of Action v. Nat'l Archives & Records Admin.*, 926 F. Supp. 2d 182, 185 (D.D.C. 2013). On the other hand, the National Archives and Records Administration is an agency within the executive branch. 44 U.S.C. § 2102. As such, it is an "agency" subject to FOIA.

The issue in this case is whether the Commission's records, exempt from FOIA while the Commission produced, retained

---

[2] Beyond its § 2107 authority to preserve records with historical value, the Archives accepts and stores documents from other federal entities, including lower federal courts and agencies in all three branches, in its Federal Records Centers. *See* 44 U.S.C. § 3103; 36 C.F.R. § 1232.10; *About the Federal Records Centers*, FED. RECORDS CTR., http://www.archives.gov/frc/about.html (last visited May 2014).

and relied upon those documents,[3] became subject to FOIA when the Commission turned its records over to the Archives.

## I

In an early interpretation of the Freedom of Information Act, the Supreme Court held that documents may be considered "agency records"—a term not defined in the Act—if the documents are created or obtained by an "agency" that receives the FOIA request and are in that agency's "control"—that is, in "the agency's possession in the legitimate conduct of its official duties." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-45 (1989). Since *Tax Analysts*, some of our decisions have considered "four factors to determine whether an agency controls a document." *Judicial Watch, Inc. v. Fed. Hous. Fin. Agency* (*Judicial Watch I*), 646 F.3d 924, 926 (D.C. Cir. 2011). The factors are

> [1] the intent of the document's creator to retain or relinquish control over the records; [2] the ability of the agency to use and dispose of the records as it sees fit; [3] the extent to which agency personnel have read or relied upon the document; and [4] the degree to which the document was integrated into the agency's record system or files.

*Id.* at 926-27 (quoting *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996)).

But this test—sometimes called the *Burka* test, although *Burka* was itself quoting a vacated opinion—is an uncertain guide when "a governmental entity not covered by FOIA"

---

[3] Despite its exemption from FOIA the Commission released many documents during its existence.

transfers records to a governmental entity that is covered. *Judicial Watch, Inc. v. U.S. Secret Serv.* (*Judicial Watch II*), 726 F.3d 208, 221 (D.C. Cir. 2013). That is what occurred here. Three days before the Commission terminated, its Chairman wrote to the Archivist of the United States stating that because FOIA exempted the Commission, "FOIA will not apply to the Commission records even after they are transferred" to the Archives. The Chairman requested that the Archivist restrict access to any Commission records not already publicly accessible on the internet until February 13, 2016[4]—five years from the date of the Commission's shutdown. He also asked that, during the five-year hold, the Archivist "conduct a systematic review of the records that are not currently available to the public with the goal of releasing as much information as is allowable" in 2016. The next day, February 11, 2011, the records were transferred.

In October 2011, Cause of Action (then the Freedom Through Justice Foundation) submitted a FOIA request to the Archives requesting certain Commission records. The request asserted that the "records under [the Archives'] control are subject to disclosure under FOIA." The Archives denied the request, first in December 2011, then again in February 2012 on

---

[4] When the head of an agency deposits records in the Archives, he may request in writing that access restrictions be placed on the records. 44 U.S.C. § 2108(a). If the Archivist agrees that the limitations are "necessary or desirable in the public interest," he must uphold them. *Id.* But the restrictions must be "consistent with FOIA." 36 C.F.R. § 1235.30(a). So if the records are "agency records," FOIA's access provisions prevail over any inconsistent restrictions requested by the transferor. *Id.* If the agency that requested the restrictions has ceased to exist, and there is "no successor in function," the Archivist is empowered to relax (or otherwise change) the restrictions to serve "the public interest." 44 U.S.C. § 2108; *see* 36 C.F.R. § 1235.32.

Cause of Action's administrative appeal. The Archives did not dispute its own status as a FOIA-covered agency. But it maintained that because the Commission was established in the legislative branch, Commission records held by the Archives were not agency records subject to FOIA. Transferring the records to the Archives' custody, the Archives concluded, was not "dispositive of the FOIA access question."

The district court applied the four-factor *Burka* control test. *Cause of Action*, 926 F. Supp. 2d at 187-89. Finding that three of the four factors weighed in favor of the Archives, the court held that the Commission's records were "not agency records subject to FOIA" and granted the Archives' motion to dismiss. *Id.* at 184, 189.

## II

The National Archives serves as a repository for the federal government, including Congress[5] and legislative branch agencies. Some of those legislative agencies are permanent. The Congressional Budget Office and the Government Accountability Office are two of the most well known. Temporary legislative commissions also deposit their records

---

[5] At the close of each Congress, non-current records of the Congress are transferred to the Archives "for preservation, subject to the orders of the House of Representatives and the Senate, respectively." 44 U.S.C. § 2118. The records of Congress, including committees and subcommittees of the House and Senate, "remain the legal property" of those bodies. *Congressional Records*, NAT'L ARCHIVES, http://www.archives.gov/legislative/research (last visited May 2014); *see* Rules of the House of Representatives, H.R. Doc. 111-157, 111th Cong., R. VII § 2 (2011); *see also* S. Res. 474, 96th Cong. (1980). Both the House and the Senate have detailed rules stating when records so delivered may be made public.

with the Archives before they go out of existence, as the Financial Crisis Inquiry Commission did in this case.

The Archives, supported by *amicus* Bipartisan Legal Advisory Group of the U.S. House of Representatives, which represents the House's institutional position in litigation, argues that when a legislative commission transfers its records to the National Archives, the FOIA status of those records is not altered. In other words, a document subject to FOIA before the Archives received it remains subject to FOIA after it arrives; a document exempt from FOIA before the Archives received it remains exempt after it arrives. The Commission's records, when created in the legislative branch, were not subject to FOIA. According to this argument, they remained exempt after the Commission deposited them with the Archives.

Although we have never explicitly held that transferring a document to the Archives does not affect the document's FOIA status, we suggested as much in *Katz v. National Archives & Records Administration*, 68 F.3d 1438 (D.C. Cir. 1995). There, we considered whether autopsy photographs of President Kennedy that had been transferred to the National Archives were agency records subject to FOIA. *Id.* at 1440. We held they were not, in part because they were "personal presidential materials when they were first created, and therefore at no time were they *ever* agency records." *Id.* at 1441. In other words, the depositing of these materials with the Archives did not convert them into "agency records" subject to FOIA.

The regulations of the Archives reflect *Katz*'s reasoning. One regulation is entitled, "Does FOIA cover all of the records at [the Archives]?" 36 C.F.R. § 1250.6. "No," it answers, "FOIA applies only to the records of the executive branch . . .." *Id.* "If you want access to" records of Congress or the federal courts, the regulation explains, "FOIA does not apply." *Id.* The

regulation then points the researcher to other regulations governing access to the FOIA-exempt records. *See, e.g.*, 36 C.F.R. pt. 1256 (Access to Records and Donated Historical Materials); *id.* pt. 1270 (Presidential Records).

Cause of Action argues that rather than relying on *Katz*, we should decide this case using the four-factor *Burka* test, a test intended to determine whether the FOIA-covered agency had control over the documents. "Control" became a consideration in FOIA cases as a result of the need to distinguish agency records from "personal materials in an employee's possession, even though the materials may be physically located at the agency." *Tax Analysts*, 492 U.S. at 145 (discussing *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 155-57 (1980)). If the agency did not control the material, the Supreme Court held, the material was not an "agency record." We have questioned whether the *Burka* test is helpful in delineating that distinction. "Our past application of the test reveals its considerable indeterminacy." *Judicial Watch II*, 726 F.3d at 220. In any event, applying the test in this case is particularly problematic because documents deposited with the National Archives do not present the sort of questions the *Burka* test purports to answer.

As applied to the Archives, the four-factor test is divorced from FOIA's key objective—revealing to the public how federal agencies operate. *See Judicial Watch I*, 646 F.3d at 927. Take for example the third and fourth *Burka* factors. Factor (3) is "the extent to which agency personnel have read or relied upon the document." *Id.* (internal quotation omitted). Factor (4) is "the degree to which the document was integrated into the agency's record system or files." *Id.* (internal quotation omitted). The third and fourth *Burka* factors make these inquiries because relied-upon and catalogued documents may be expected to reveal something "about agency decisionmaking"—"agency"

here referring to the Archives, not the Commission. *Id.* at 928. But with respect to the Archives, these inquiries are entirely otiose.

In order to catalog and file documents delivered from Congress or, for example, the Supreme Court, archivists review the documents and make preservation decisions. We may assume that, once those decisions are made, the records are "integrated" into the Archives' "files." But those typical archival functions—common to every record in the Archives—do not suddenly convert the records of a defunct legislative commission into "agency records" able to expose the operations of the Archives "to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976).

Given the difficulties with the *Burka* test, we have "indicated that the standard, four-factor control test does not apply to documents that an agency has either obtained from, or prepared in response to a request from, a governmental entity not covered by FOIA." *Judicial Watch II*, 726 F.3d at 221. As we said in *Bureau of National Affairs v. U.S. Department of Justice*, when "documents originate within the Congress, the judiciary, and FOIA-exempt executive agencies, sometimes special policy considerations militate against a rule compelling disclosure of such records merely because such documents happen to come into the possession of [a FOIA-covered] agency." 742 F.2d 1484, 1491-92 (D.C. Cir. 1984) (alterations and internal quotation marks omitted). In this line of cases, we have analyzed only the transferring entity's intent to control the documents and their future use. "This focus renders the first two factors of the [*Burka*] test effectively dispositive." *Judicial Watch II*, 726 F.3d at 221.

Although we, too, will not use the *Burka* test, we do not think it makes sense to apply the analysis from *Judicial Watch*

*II* and the cases discussed in that opinion to the National Archives.  Like the four-factor test, the *Judicial Watch II* test also measures "control" in a way that is foreign to the *sui generis* nature of the Archives.

In order for a document to be considered an "agency record," there must be some relationship between the record and the FOIA-covered agency.  This relationship has been described as one of "possession" or "control."  *E.g.*, *Kissinger*, 445 U.S. at 155.  And we have looked to possession and control because, often, these concepts capture the nature and use of a document as it changes hands among federal agencies.  *See, e.g.*, *Tax Analysts*, 492 U.S. at 146-47; *Judicial Watch II*, 726 F.3d at 221-23.  Not so here.

The main function of the Archives is to preserve documents of enduring value from all three branches of government.[6]  The Archives does not use documents created in the three branches in any operational way, or indeed in any way comparable to any other federal agency.  It may control them in a sense, but its control consists in cataloguing, storing, and preserving, not unlike a "warehouse."  *See* Ann H. Wion, *The Definition of "Agency Records" Under the Freedom of Information Act*, 31 STAN. L. REV. 1093, 1111 (1979).[7]  Variances in this sort of

[6] The documents may come from any of the three branches of government or, as in *Katz*, from private parties as a donation.  *See* 44 U.S.C. § 2111(2).

[7] And if a particular document originated with a FOIA-covered entity, the Archives' responsibilities include disseminating the document pursuant to a lawful FOIA request.  *Cf., e.g.*, *Morley v. CIA*, 508 F.3d 1108, 1113 (D.C. Cir. 2007).  The Archives regularly grants FOIA requests for FOIA-covered records.  *See* NAT'L ARCHIVES, FISCAL YEAR 2012: ANNUAL FOIA REPORT, *available at* http://www.archives.gov/foia/reports/2012.pdf.

"control" are entirely unhelpful in determining a record's value to a FOIA requester, *see Judicial Watch I*, 646 F.3d at 928 ("[A] document that could not reveal anything about agency decisionmaking is not an 'agency record.'"), and irrelevant to any withholding prerogative that may remain with the transferor, *see Judicial Watch II*, 726 F.3d at 221.

Ultimately we are dealing with a question of statutory interpretation and congressional intent. *See Kissinger*, 445 U.S. at 154; *Judicial Watch II*, 726 F.3d at 225. FOIA does not define "agency records," but we are confident that Congress did not intend to expose legislative branch material to FOIA simply because the material has been deposited with the Archives. Yet that would be the consequence of what Cause of Action proposes.

*Affirmed.*