**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **CAUSE OF ACTION INSTITUTE**, <br><br> Plaintiff, <br><br> v. <br><br> **NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION**, <br><br> Defendant. |

Civil Action No. 19-1927 (TSC)

**MEMORANDUM OPINION**

Plaintiff Cause of Action Institute has sued Defendant National Oceanic and Atmospheric Administration ("NOAA") under the Freedom of Information Act ("FOIA"), challenging the adequacy of NOAA's search for documents responsive to Plaintiff's FOIA request. The parties have cross-moved for summary judgment. For the reasons that follow, the court will GRANT Plaintiff's Motion for Summary Judgment, ECF No. 30, and DENY Defendant's Motion for Summary Judgment, ECF No. 29. The court will also DENY as moot Plaintiff's Motion for Oral Hearing on the pending cross-motions, ECF No. 40.

## I.    BACKGROUND

### A. Agency structure and procedures

The Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. § 1801 *et seq.*, authorizes the Secretary of Commerce to manage domestic marine fisheries. In turn, the Secretary has delegated that authority to the National Marine Fisheries Service (the "Service"), an office within NOAA. 16 U.S.C. §§ 1852, 1853. The Service supervises the work of eight Regional Fishery Management Councils ("Councils"), *id.* § 1852(a)(1), whose primary duty is to

develop management plans for fisheries within their geographic area, *id.* §§ 1852(h)(1), 1853(c), which the Service reviews and—with the Secretary's approval—promulgates, *id.* § 1852(b).

Each Council comprises voting members, nonvoting members, and administrative employees. *See* 16 U.S.C. § 1852(b), (c), (f). Voting members include each constituent state's head of fishery management, the Service's regional director, and individuals appointed because of their knowledge or experience in fishery management. *Id.* § 1852(b). Appointed voting members "who are not employed by the Federal Government or any State or local government" receive monetary compensation for time "engaged in the actual performance of duties for [their] Council." *Id.* § 1852(d). Non-voting members include the regional or area director of the U.S. Fish and Wildlife Service, the Commander of the Coast Guard for the relevant geographical area, the Executive Director of the Marine Fisheries Commission for the relevant geographical area, and a representative from the Department of State. *Id.* § 1852(c)(1). Both voting and non-voting members are entitled to reimbursement "for actual expenses incurred" in performing their official duties. *Id.* § 1852(d). Administrative employees are staff, including an executive director, who are appointed as necessary to assist the Council in performing its functions. *Id.* § 1852(f).

This case involves the New England Fishery Management Council ("NE Council"), which has jurisdiction over the Atlantic Ocean seaward of the coastal waters of Maine, New Hampshire, Massachusetts, Connecticut, and Rhode Island. 16 U.S.C. § 1852(a)(1)(A). NE Council members periodically convene official, public meetings to deliberate and propose fishery management plans or amendments. *Id.* § 1852(i). They also use email and other forms of electronic communication to discuss substantive matters related to that official business. Def.'s Reply to Pl.'s SUMF ¶ 31, ECF No. 33-1; *see* E. Goethel Decl. ¶¶ 10–12, ECF No. 30-5

("My colleagues and I used our personal email accounts . . . to conduct substantive work."); D. Goethel Decl. ¶¶ 9–10, ECF No. 30-6 ("Council members used email extensively for official business."). The NE Council provides official email accounts to its administrative employees, but not to its council members (whether voting or non-voting). Def.'s Reply to Pl.'s SUMF ¶ 30.

**B. Plaintiff's FOIA request**

The subject matter of Plaintiff's FOIA request is the New England Industry-Funded Monitoring Omnibus Amendment ("Omnibus Amendment"). In short, the Omnibus amendment "establishe[d] a process to standardize future industry-funded monitoring programs . . . and establishe[d] industry-funded monitoring in the Atlantic herring fishery." *See* Compl. Ex. 1 at 1, ECF No. 1-1. The NE Council, in coordination with the Service, sought approval for the Omnibus Amendment in September 2018. Def.'s Reply to Pl.'s SUMF ¶¶ 33–34; *see* Mulvey Decl. ¶¶ 26–30, ECF No. 30-4. On December 18, 2018, NOAA Regional Administrator Michael Pentony advised the NE Council by letter that the Secretary of Commerce had approved the Omnibus Amendment. Compl. Ex. 1.

On January 7, 2019, Plaintiff submitted a FOIA request to NOAA seeking various documents pertaining to the Omnibus Amendment "for the time period of September 19, 2018 to the present." Compl. Ex. 2 at 1, ECF No. 1-2. That request included "[a]ll correspondence (including e-mail, text/instant messages, etc.) between and amongst members and/or staff of the New England Fishery Management Council concerning the final approval of the Omnibus Amendment and/or the December 18, 2018 letter from Administrator Pentony." *Id.* at 2.

On February 4, 2019, NE Council Executive Director Tom Nies wrote to the Council's members and staff, apprising them of the FOIA request and asking them to reply "with a response that either provides relevant documents or states that you do not have any." Mulvey Decl. Ex. 7 at 1, ECF No. 30-4 (emphasis omitted). Nies emphasized that "Council members

should note the request for emails and/or texts that may have been sent between Council members." *Id.* He also referred members to the "attached policy directive," which would "explain[] when such documents are federal records and must be provided." *Id.* Specifically, he quoted a passage from the directive stating that "[a] document written or received by an individual Council member also reflects Council business if it relates to a matter within the Council's jurisdiction and the document is specifically discussed or disseminated at a Council meeting." *Id.*

The "policy directive" attached to Nies's email was the "NMFS POLICY DIRECTIVE ANNEX, PDS 30-125-ANNEX-A" issued by the Service on February 19, 2013. Mulvey Decl. Ex. 1 at 1, ECF No. 30-4 ("Annex"). That Annex is intended to "identif[y] what Regional Fishery Management Council (Council) member documents are considered agency records and describe[] their handling." *Id.* It cites the Federal Records Act for the requirement that agencies "preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency." *Id.* (quoting 44 U.S.C. § 3101). Accordingly, "[d]ocuments written or received by Council members are agency records that are subject to the Federal Records Act if they reflect official Council business"—that is, "business of the Council as a full body":

> For example, a comment or views letter signed by the Council chair on behalf of the entire Council reflects Council business. Similarly, a letter submitted to the chair as the principal representative of the Council reflects Council business. . . . A document written or received by an individual Council member also reflects Council business if it relates to a matter within the Council's jurisdiction and the document is specifically discussed or disseminated at a Council meeting (including committee meetings, planning meetings, etc.).

*Id.* Official Council business, however, "does not include documents that reflect personal or private business matters of members, or matters related to their other employment." *Id.*

Documents reflecting official Council business "must be collected by the Council staff and maintained in the Council's record-keeping system." *Id.*

Based on its initial search for documents, Defendant made two interim releases of responsive records, in March and June 2019. Def.'s Reply to Pl.'s SUMF ¶ 38; Mulvey Decl. ¶¶ 37–38. Plaintiff filed this suit in June 2019. Def.'s Reply to Pl.'s SUMF ¶ 39 (citing Compl.) In July 2019, Defendant provided its final release with some additional responsive records. *Id.* ¶ 40. In January 2020, Defendant informed Plaintiff that it had searched "for what NOAA considers to be agency records," "[i]n accordance with" the Annex. *Id.* ¶¶ 41–42 (citing Mulvey Decl. Ex. 6, ECF No. 30-4). Defendant also provided Plaintiff with a copy of the Nies email regarding the search. Mulvey Decl. ¶ 43. Plaintiff responded that it believed the search had been inadequate. *See* Def.'s Reply to Pl.'s SUMF ¶ 45. Defendant agreed to conduct a supplemental search, including a date range and certain keywords, which ultimately produced several additional disclosures. *Id.* ¶¶ 45–48. But Defendant continued to limit its search in accordance with the definition of agency records in the Annex—that is, it did not search for internal correspondence in NE Council members' personal accounts unless that correspondence was "specifically discussed or disseminated at a Council meeting" or otherwise "reflect[ed] official Council business." *Id.* ¶ 47; Mulvey Decl. Ex. 1 at 1. The sole question for the court is whether that choice rendered Defendant's search for responsive records inadequate. Def.'s Reply to Pl.'s SUMF ¶ 49; *see* Proposed Briefing Schedule, ECF No. 28.

## II.    LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quotation omitted). The district court conducts a *de novo* review of the government's decision to withhold requested documents under any of FOIA's specific statutory exemptions. 5 U.S.C. § 552(a)(4)(B). In cases

concerning the adequacy of an agency's search efforts, summary judgment may be based solely on information provided in the agency's supporting declarations. *See, e.g.*, *ACLU v. U.S. Dep't of Def.,* 628 F.3d 612, 619 (D.C. Cir. 2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001).

An agency will be granted summary judgment on the adequacy of its search if it "show[s] beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007). "The question is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994). Furthermore, the "adequacy of the search . . . is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). Courts are mindful, however, that "congressional intent tilt[s] the scale in favor of disclosure." *Morley*, 508 F.3d at 1114 (internal citation omitted).

### III.    ANALYSIS

The parties agree that the adequacy of Defendant's search depends on whether an "agency record" for purposes of FOIA includes "correspondence (including e-mail, text/instant messages, etc.) between and amongst members and/or staff of the [NE Council] concerning the final approval of the Omnibus Amendment and/or the December 18, 2018 letter from Administrator Pentony," Compl. Ex. 2 at 2, even when that correspondence does not meet the definition of agency records in the Annex—*i.e.*, it has not been "submitted to the chair" or "specifically discussed or disseminated at a Council meeting," Annex at 1.

The Supreme Court has set forth two criteria for requested materials to qualify as agency records under FOIA. "First, an agency must either create or obtain the requested materials."

*U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144 (1989) (quotation omitted). "Second, the agency must be in control of the requested materials at the time the FOIA request is made." *Id.* at 145. "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records.'" *Id.* at 142 n.3.

Notably, the definitions of "agency records" in the Federal Records Act and Defendant's Annex cannot displace FOIA's definition of that term. The Supreme Court and D.C. Circuit have "reject[ed] . . . the invitation to hold that the treatment of documents for disposal and retention purposes under the various federal records management statutes determines their status under FOIA." *Bureau of Nat'l Affs., Inc. v. U.S. Dep't of Just.*, 742 F.2d 1484, 1493 (D.C. Cir. 1984) (citing *Forsham v. Harris*, 445 U.S. 169, 183–84 (1980) (other statutory definitions of agency records "are not dispositive of the proper interpretation of congressional use of the word[s] in the FOIA")). Likewise, whether "defendants did not understand [requested materials] to be agency records is immaterial"—what matters is the materials' objective legal status, "not the agency's subjective understanding of [that] status." *Forest Cnty. Potawatomi Cmty. v. Zinke*, 278 F. Supp. 3d 181, 196 (D.D.C. 2017) (citing *Burka v. U.S. Dep't of Health & Hum. Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996)); *see also Bureau of Nat'l Affs., Inc.,*, 742 F.2d at 1495 ("In the context of these cases, however, the question is whether the employee's creation of the documents can be attributed to the agency for the purposes of FOIA, regardless of whether the agency requires employees to retain the documents.").

Applying the applicable FOIA test, the court concludes that the materials requested—NE Council members' internal correspondence "concerning the final approval of the Omnibus Amendment and/or the December 18, 2018 letter from Administrator Pentony," Compl. Ex. 2 at 2—qualify as agency records. Therefore, Defendant's search was inadequate.

**A.** **Agency creation or obtainment of the requested materials**

The first criterion for agency records is that they must either be "create[d]" or "obtain[ed]" by the agency. *Tax Analysts*, 492 U.S. at 144. An agency may create or obtain records not only through the actions of its own employees, but also through external entities who have "acted on behalf of [the agency]." *Burka*, 87 F.3d at 515. Whether an entity acts on behalf of an agency may be manifest by "extensive supervision and control exercised by the agency" over the entity's creation or obtainment of the materials. *Id.*; *see also id.* at 510–11 (agency commissioned and designed the survey firm's collection and analysis of the data requested); *Forest Cnty. Potawatomi Cmty.*, 278 F. Supp. 3d at 196 (agency supervised project management firm acting on its behalf). *But see Forsham*, 445 U.S. at 177 (the records of "private organizations receiving federal financial assistance grants are not" agency records).

Under that standard, Defendant created the requested materials at issue here. It is undisputed that the NE Council is an "agency" housed within Defendant for purposes of FOIA. Def.'s Reply to Pl.'s SUMF ¶ 22; 16 U.S.C. § 1852. Plaintiff seeks correspondence drafted by and to NE Council members and staff who have been appointed as officials of that agency and who are to some degree compensated for their work. And the correspondence was drafted to discuss "the final approval of the Omnibus Amendment and/or the December 18, 2018 letter from Administrator Pentony," Compl. Ex. 2 at 2, in the course of carrying out their agency's statutory duty to "prepare and submit to the Secretary [of Commerce] . . . amendments to [the fishery management] plan that are necessary from time to time," 16 U.S.C. § 1852(h)(1); *see id.* § 1853(c). Defendants do not meaningfully dispute that Council members have relied upon such correspondence "frequently" in the past. Def.'s Reply to Pl.'s SUMF ¶ 31; E. Goethel Decl. ¶¶ 10–12 (NE Council members use their personal email accounts to discuss "fishery management plan amendments," "planned motions," expected votes, and other "issues that might

come up at the next business meeting"). Therefore, even if the NE Council's voting members are not full-time employees, they were acting "on behalf of" the agency in drafting any such correspondence. *Burka*, 87 F.3d at 515. That is enough to attribute the requested materials' creation to Defendant.

Defendant's counterarguments are unpersuasive. Initially, its sole—and circular—argument on this score was that "NOAA has neither created nor obtained" the requested materials "because . . . these records are not agency records." Def.'s MSJ Memo at 9, ECF No. 29-1. In subsequent briefing, Defendant added that NE Council members are not "employees" because they use personal email accounts and are generally not financially compensated for the type of correspondence plaintiff has requested. Def.'s Opp. to Pl.'s MSJ at 6, ECF No. 34. But if that were the law, agencies could easily evade their FOIA obligations by removing government email accounts or manipulating compensation schemes, resulting in an end run around the statute's "basic purpose . . . to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). In any event, neither the use of personal email accounts nor limited compensation of NE Council members alters the conclusion that the members were acting "on behalf of" Defendant in creating the correspondence Plaintiff has requested. *See Hyatt v. U.S. Pat. & Trademark Off.*, 346 F. Supp. 3d 141, 149 (D.D.C. 2018) ("[T]he fact that the creation . . . of [a record] may have been outside the scope of . . . employment with the agency is not dispositive as to whether [it] is an agency record.").

Lastly, Defendant attempts to downplay the degree of "supervision and control" it exercises over NE Council voting members by noting that they can generally only be removed

by a two-thirds vote of the other voting members and a decision by the Secretary of Commerce. Def.'s Opp. to Pl.'s MSJ at 7 (citing *Burka*, 87 F.3d at 515; 16 U.S.C. § 1852(b)(6)(A)–(B)). In some respects, the "supervision and control" test from *Burka* is inapposite here, where the requested materials were created by government officials, not a third-party nongovernmental entity like the survey firm hired by the agency in that case. *See Burka*, 87 F.3d at 515. Regardless, the removal provisions Defendant cites undermine its position by demonstrating that Defendant *can* remove voting members from their positions. Even more important and relevant, however, is the statutory procedure for carrying out the agency's duties, which requires each Council to submit its fishery management plan—and any amendments to it—to Defendant for approval by the Secretary of Commerce. 16 U.S.C. § 1852(h)(1); *see id.* § 1853(c). If the Council fails to fulfill its statutory obligations, the Secretary may prepare or amend plans *sua sponte*. 16 U.S.C. § 1854(c)(1)(A)–(B). In other words, Defendant maintains full control over the plans proposed by each Council through its voting members. NE Council members' creation of the requested materials here, which pertain to an amendment to such a plan, may therefore be attributed to Defendant.

**B. <u>Agency control over the requested materials</u>**

The second criterion for agency records is that the agency controls them when the FOIA request is made. *Tax Analysts*, 492 U.S. at 145. In this Circuit, courts look to several factors to determine agency control, including:

> (1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.

*Burka*, 87 F.3d at 515.  "In weighing the *Burka* factors, [courts] are mindful that the 'core purpose of the FOIA' is to contribute significantly to public understanding *of the operations or activities of the government.*"  *Jud. Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 928 (D.C. Cir. 2011) (formatting modified) (quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press,* 489 U.S. 749, 775 (1989); 5 U.S.C. § 552(a)(4)(A)(iii)).  Under the relevant factors, Defendant fails to meet its burden of showing a lack of control.

The court "first consider[s] the intent of the agencies to retain or relinquish control over the [requested materials], an inquiry that focuses on the agencies' policies and actions, not the subjective intent of the employees who created the document."  *Cause of Action Inst. v. Off. of Mgmt. & Budget*, 10 F.4th 849, 855–56 (D.C. Cir. 2021).  It is undisputed that Defendant intends to retain control over at least some of the NE Council members' emails; otherwise, Nies would not have directed the members to produce them.  *See* Mulvey Decl. Ex. 7 at 1.  As a result, the Annex cannot demonstrate Defendant's intent to relinquish control over documents except those beyond the Annex's definition of "agency records."  But that definition relies principally and mistakenly on the meaning of "agency records" for purposes of the Federal Records Act rather than FOIA, *see supra* at 7, and is therefore a less reliable guide to the agency's intent with respect to its FOIA obligations.  As a result, this factor does little to establish Defendant's lack of control over the requested materials.

Next, the court considers the agency's ability to use and dispose of the requested materials.  Defendant's full-time employees or officials do not have direct access to NE Council members' personal emails or text messages, and the Annex suggests that Defendant generally does not require members to provide them if they do not "reflect official Council business."  Mulvey Decl. Ex. 1 at 1.  But the fact that Defendant generally "has not asserted control over

voting member[s'] emails that exist outside of the Council's record keeping system," Def.'s Opp. to Pl.'s MSJ at 9, does not mean Defendant lacks the ability to do so. As already discussed, the Nies email shows that Defendant requires NE Council members to produce certain kinds of correspondence from their personal email accounts, and nothing prevents Defendant from requiring other kinds of correspondence be kept for future FOIA requests. *See Bureau of Nat'l Affs., Inc. v. U.S. Dep't of Just.*, 742 F.2d 1484, 1495 (D.C. Cir. 1984) ("Because FOIA does not require an agency to create or obtain a record, so long as the records disposal regulations permit destruction of 'non-record materials' at the discretion of an agency or agency employee, documents will be available under FOIA solely based on whether an individual has chosen to keep those documents."). Despite it not having done so here, therefore, it appears that Defendant retains an ability to assert control over the requested materials.

The third *Burka* factor evaluates "whether the document has some connection to agency decisionmaking because personnel have read or relied upon it." *Cause of Action Inst.*, 10 F.4th at 857. "Actual use is often 'the decisive factor' when determining whether a requested document is an agency record.'" *Id.* (quoting *Jud. Watch, Inc.*, 646 F.3d at 927. This makes sense, given "FOIA's purpose of 'open[ing] agency action to the light of public scrutiny.'" *Jud. Watch, Inc.*, 646 F.3d at 927 (quoting *Dep't of Air Force v. Rose,* 425 U.S. 352, 372 (1976)). Here, Plaintiff requests documents that were actually written, read, and relied upon by the NE Council members. Defendant objects that the agencies themselves, "NOAA and NEFMC[,] cannot have read or relied upon emails that lie outside of the Council's record-keeping system." Def.'s Opp. to Pl.'s MSJ at 9. But that objection mistakes the legal standard—what matters is "the extent to which *agency personnel* have read or relied upon the document[s]." *Burka*, 87 F.3d at 515 (emphasis added). And Defendant's assertion that "what a voting member says

through email is of no relevance to the transaction of Council business," Def.'s Opp. to Pl.'s MSJ at 10, is flatly contradicted by undisputed testimony that NE Council members regularly discuss, inform, and arrange for the formal decision-making processes at official meetings via private electronic correspondence. Def.'s Reply to Pl.'s SUMF ¶ 31; E. Goethel Decl. ¶¶ 10–12; D. Goethel Decl. ¶¶ 9–10. Accordingly, this factor decisively confirms that the requested materials at issue are agency records.

The fourth *Burka* factor is the degree to which the requested materials were integrated into the agency's record system or files. This factor, like the third, relates to whether the requested materials "could . . . reveal anything about agency decisionmaking." *Judicial Watch, Inc.*, 646 F.3d at 928. The Annex did not require the requested materials to be kept in Defendant's record keeping system. *See* Mulvey Decl. Ex. 1. But NE Council members, acting on Defendant's behalf and in preparation for making decisions, may have created and maintained the kind of correspondence that Plaintiff has requested. *See supra* Section III.A; *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 827 F.3d 145, 149 (D.C. Cir. 2016) ("[A]n agency always acts through its employees and officials. If one of them possesses what would otherwise be agency records, the records do not lose their agency character just because the official who possesses them takes them out the door."). And if an agency could "deprive the citizens of their right to know what [it] is up to by the simple expedient of maintaining [internal] emails on an account in another domain, that purpose [of FOIA] is hardly served." *Competitive Enter. Inst.*, 827 F.3d at 150. Thus, this factor does not disturb the conclusion that the requested materials here are agency records.

## IV. CONCLUSION

For these reasons, the court concludes that the requested materials at issue are agency records for purposes of FOIA and that Defendant's search was therefore inadequate.

Accordingly, the court will GRANT Plaintiff's Motion for Summary Judgment, ECF No. 30,

DENY Defendant's Motion for Summary Judgment, ECF No. 29.  The court will ORDER

Defendant to search for and produce all responsive records to Plaintiff within 60 days.  The court

will also DENY as moot Plaintiff's Motion for Oral Hearing on the pending cross-motions, ECF

No. 40.  A corresponding Order will accompany this Memorandum Opinion.


Date: May 24, 2023


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge