# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 2, 2020        Decided August 20, 2021

No. 20-5006

CAUSE OF ACTION INSTITUTE,
APPELLANT

v.

OFFICE OF MANAGEMENT AND BUDGET AND UNITED STATES
DEPARTMENT OF AGRICULTURE,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-01508)

———

*Ryan P. Mulvey* argued the cause for appellant. With him on the briefs was *R. James Valvo III.*

*Dennis Fan*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Ethan P. Davis*, Acting Assistant Attorney General, and *Mark B. Stern*, Attorney.

*Jeffrey L. Light* was on the brief for *amicus curiae* Property of the People, Inc., in support of neither party.

Before: SRINIVASAN, *Chief Judge*, RAO, *Circuit Judge*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* RAO.

RAO, *Circuit Judge*: Through the Freedom of Information Act ("FOIA"), Cause of Action Institute sought the release of the internet browsing histories of several officials, including the Director of the Office of Management and Budget and the Secretary of the Department of Agriculture. The district court held these browsing histories are not agency records, so they are not subject to disclosure under FOIA. We agree and thus affirm.

I.

Cause of Action is a nonprofit organization committed to government transparency and openness. It submitted a request for the internet browsing histories of several senior agency officials over a specified period of approximately six months, asserting that the histories were subject to disclosure under FOIA. 5 U.S.C. § 552(a)(3)(A); *id.* § 552(a)(4)(B). Browsing histories record internet activity. When a person navigates to a specific webpage, the internet browser, such as Google Chrome or Internet Explorer, records the location of that webpage. Unless this feature is disabled, the browser will maintain a history of all webpages to which a person has navigated.

Cause of Action's requests for browsing histories included two officials by name—Office of Management and Budget ("OMB") Director John Michael Mulvaney and U.S. Department of Agriculture ("USDA") Secretary Sonny Perdue—and two by position—the OMB Associate Director of Strategic Planning and Communications and the USDA Director of Communications (the "officials"). OMB acknowledged receiving Cause of Action's request, but never processed it. USDA, however, denied Cause of Action's

request, explaining that the browsing histories were not integrated into its record system, and thus the Department did not have sufficient control over the browsing histories such that they constituted "agency records" within the meaning of FOIA. 5 U.S.C. § 552(a)(4)(B). USDA also denied Cause of Action's administrative appeal.

Having failed to secure the release of the browsing histories, Cause of Action brought suit against OMB and USDA in federal district court, contending the histories are agency records subject to disclosure under FOIA. The district court granted summary judgment to the agencies. *Cause of Action Inst. v. OMB*, 2019 WL 6052369, at *1 (D.D.C. Nov. 15, 2019). The court first determined that whether something qualifies as an agency record goes to the merits of the case, not to the court's subject matter jurisdiction. On the merits, the court considered the four factors identified in *Burka v. U.S. Department of Health and Human Services*, 87 F.3d 508, 515 (D.C. Cir. 1996), to determine whether an agency "controls" the requested documents to the extent required for them to constitute agency records. The district court found three of the *Burka* factors favored treating the browsing histories as under the agencies' control. Nonetheless, the court held the agencies lacked the requisite control because agency personnel did not read or rely upon the browsing histories. *Cause of Action*, 2019 WL 6052369, at *10–11. The district court accordingly concluded the browsing histories did not qualify as agency records. The court also denied Cause of Action's request for discovery into whether and how the officials used their browsing histories. *Id.* at *6–8. Cause of Action timely appealed.

## II.

We first consider a threshold matter, namely whether the existence of an "agency record" goes to the merits of a FOIA challenge or to our jurisdiction. The district court held that it

goes to the merits. Although neither party challenges that decision, we address the question because it pertains to our jurisdictional authority, which we must consider irrespective of whether it is raised by the parties. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

Subject matter jurisdiction concerns "a court's power to hear a case." *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (cleaned up). By contrast, the merits of a dispute pertain to the remedial powers of the court, i.e., whether a party has successfully established the elements of its claim such that a court may grant relief.

FOIA authorizes "jurisdiction to enjoin the agency from withholding agency records … improperly … from the complainant." 5 U.S.C. § 552(a)(4)(B). Whether that provision pertains to the court's subject matter jurisdiction or merely its power to order a remedy on the merits has not been squarely addressed by this court.[1] The text and structure of FOIA, however, make clear that whether the requested materials are "agency records" goes to the merits of the dispute—the "court's authority to impose certain remedies"—rather than the

---

[1] In a related context, we have held that it was error to dismiss on jurisdictional grounds, rather than on the merits, when a FOIA requester sought disclosure from an agency not covered by FOIA under Section 552(a)(4)(B). *Citizens for Resp. & Ethics in Wash. v. Off. of Admin.*, 566 F.3d 219, 225 (D.C. Cir. 2009); *see also Statton v. Fla. Fed. Jud. Nominating Comm'n*, 959 F.3d 1061, 1064 (11th Cir. 2020) (holding that Section 552(a)(4)(B)'s use of the word "jurisdiction" refers to the court's remedial powers, not its subject matter jurisdiction); *Main Street Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 566–67 (2d Cir. 2016) (same). *But see Goldgar v. Off. of Admin., Exec. Off. of the President*, 26 F.3d 32, 34–36 (5th Cir. 1994).

court's jurisdictional power to hear the case. *United States v. Philip Morris USA Inc.*, 840 F.3d 844, 850 (D.C. Cir. 2016).

Section 552(a)(4)(B) plainly confers upon courts the power to order a particular remedy—"to enjoin the agency from withholding agency records … improperly." 5 U.S.C. § 552(a)(4)(B). This text is similar to language in other statutes we have indicated go to the court's remedial authority. *See Philip Morris*, 830 F.3d at 851 (citing 15 U.S.C. § 378(a), which gives courts "jurisdiction to prevent and restrain violations of this chapter and to provide other appropriate injunctive or equitable relief"; and 31 U.S.C. § 5365, which provides "jurisdiction to prevent and restrain [certain] transactions by issuing appropriate orders"). Indeed, it is "commonplace" for the term "jurisdiction" to be used in the sense of "specifying the remedial powers of the court." *Steel Co.*, 523 U.S. at 90 (emphasis omitted).

Understanding Section 552(a)(4)(B) to implicate a court's remedial authority, rather than jurisdiction, is also consistent with FOIA case law and general principles of subject matter jurisdiction. For instance, "[t]he party invoking federal jurisdiction bears the burden of establishing" it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). But in FOIA cases, "[t]he burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records' or have not been 'improperly' 'withheld.'" *DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989); *Aguiar v. DEA*, 865 F.3d 730, 735 (D.C. Cir. 2017) (same). If Section 552(a)(4)(B) were interpreted as a limitation on subject matter jurisdiction, one of these principles would have to yield. We would have to either overrule our case law explaining that agencies bear the burden of demonstrating that the materials sought are not agency records, or create a class of cases where the plaintiff does not bear the burden of demonstrating subject matter jurisdiction. Instead, we follow the plain meaning of Section 552(a)(4)(B),

which confers remedial authority to order the production of agency records.

Whether requested documents are "agency records" goes to the merits of the dispute, not the court's subject matter jurisdiction. Although Section 552(a)(4)(B) does not confer subject matter jurisdiction, the district court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction over Cause of Action's appeal from the district court's final decision under 28 U.S.C. § 1291.

## III.

Turning to the central issue in the case, we consider whether the browsing histories are agency records that the agencies must disclose pursuant to FOIA. *See Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006) (reviewing de novo whether documents are "agency records").

FOIA limits the documents a requester may receive to those that are "agency records." 5 U.S.C. § 552(a)(4)(B). Although the term is not defined in the statute, we do not read the term literally to encompass "all documents in the possession of a FOIA-covered agency." *Judicial Watch, Inc. v. U.S. Secret Serv.* ("*Judicial Watch II*"), 726 F.3d 208, 216 (D.C. Cir. 2013). Rather, "the term 'agency records' extends only to those documents that an agency both (1) create[s] or obtain[s], and (2) controls … at the time the FOIA request [was] made." *Id.* (cleaned up). The agencies do not dispute that they created the browsing histories at issue, so this case turns on their control of the histories.[2]

---

[2] Because the parties do not dispute the agencies created the browsing histories, we treat the issue as conceded. It is far from clear, however, that the agencies created the browsing histories within the meaning of FOIA. Agency employees in some sense create a history through their internet browsing, but the *browser* automatically generates the

Factors that determine whether an agency controls a document may include: "(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files." *Burka*, 87 F.3d at 515 (cleaned up). The *Burka* factors regarding control of a document, however, must be understood as part of the ultimate question of whether a document is an agency record. This question is assessed under a "totality of the circumstances" test that "focus[es] on a variety of factors surrounding the creation, possession, control, and use of the document by an agency." *Bureau of Nat'l Affairs, Inc. v. DOJ* ("*BNA*"), 742 F.2d 1484, 1490, 1492 (D.C. Cir. 1984).

The parties dispute which of these two "tests"—*BNA* or *Burka*—applies, but there is little daylight between them. *BNA* directs consideration of "a variety of factors" to determine whether something is an agency record, including the control factor that *Burka* explicates. *Id.* at 1490. Our cases recognize that the *Burka* factors are not an inflexible algorithm. *See Judicial Watch II*, 726 F.3d at 220 (acknowledging "considerable indeterminacy" of the *Burka* test); *see also Cause of Action v. Nat'l Archives & Recs. Admin.*, 753 F.3d 210, 212–13 (D.C. Cir. 2014) (noting that the factors originated in an opinion vacated by the Supreme Court). In determining whether a document is an agency record in light of the "totality of the circumstances," any fact related to the document's creation, use, possession, or control may be relevant. *Consumer Fed'n*, 455 F.3d at 287. Here, the agencies' retention and

---

history. *Cf.* Cause of Action Br. 5 ("The use of an Internet browser to visit a website entails the automatic creation … of various pieces of information.").

access policies for browsing histories, along with the fact they did not use any of the officials' browsing histories for any reason, lead to the conclusion that these documents are not agency records.

We first consider the intent of the agencies to retain or relinquish control over the internet browsing histories, an inquiry that focuses on the agencies' policies and actions, not the subjective intent of the employees who created the document. *See Judicial Watch, Inc. v. Fed. Hous. Fin. Agency* ("*Judicial Watch I*"), 646 F.3d 924, 927 (D.C. Cir. 2011); *see also Tax Analysts*, 492 U.S. at 147–48 (rejecting conceptions of FOIA that "make[] the determination of 'agency records' turn on the intent of the creator of [the] document"). Here, OMB and USDA generally did not control the browsing histories.[3]

In fact, OMB and USDA have afforded their employees significant control over the browsing histories. At the time of the suit, USDA had not altered the ninety-day default retention window for browsing histories on Google Chrome. It had increased the retention window for Internet Explorer—showing some element of control over those histories—but only to forty-five days from the default of twenty. In effect, all browsing histories would be deleted within a few months. And with respect to all browsers other than Internet Explorer, USDA permitted employees to delete their histories before any default retention period had expired. Employees could also freely delete their browsing histories on mobile devices such as

---

[3] Several of our cases consider whether an agency has relinquished control to an entity external to the agency. *See, e.g.*, *Burka*, 87 F.3d at 515 (finding the agency intended to retain control over records in part because it prohibited a contractor from disclosing them). That situation is not presented here, however, because the question of control over the browsing histories pertains to the agencies' internal policies.

smart phones. Furthermore, USDA frequently undertook routine actions, such as updating browser versions, that could result in the permanent deletion of a browsing history, and USDA took no actions to prevent such deletion. J.A. 64 (declaration of USDA Information Discovery and Litigation Support Program Manager Jeng Mao).

OMB had similar practices. It modestly increased the automatic retention window for some browsers, retained the default on others, and permitted "[a]n individual user … to delete any portion or all of [his] browsing history without centralized authorization." J.A. 78 (declaration of OMB Director of Information and Technology Anthony McDonald). OMB also did not make special effort to preserve browsing histories when it conducted routine tasks that risked losing or destroying that data. In all, the agencies have made a substantial showing that they lacked the intent to retain the histories or to control whether employees deleted their browsing histories during the temporary retention period.

Cause of Action maintains the agencies could have imposed stricter control over these browsing histories and such control is not undercut by the agencies' decisions to allow employees to delete their histories or to permit automatic deletions. Mere authority to control, however, is not enough. The relevant consideration is how much control the agencies actually asserted over the documents at issue. *See BNA*, 742 F.2d at 1494–95 ("[B]oth [agencies] permit their employees to dispose of these [materials] at their discretion. Thus, the agencies have not sought to exercise any institutional control over [those] documents, although they could do so under the applicable statute and regulations."). The agencies lacked the requisite intent to retain and to control the browsing histories.

When assessing whether a document is an agency record, we also consider the agency's ability to use and dispose of the requested documents. OMB and USDA both restricted official

access to an employee's browsing history. For instance, neither agency could remotely monitor or collect an employee's browsing history on a mobile device. And OMB staff lacked access to other employees' browsing histories unless the staff were at the user's workstation, were able to sign in virtually with the assistance of the user, or had approval from OMB's Office of the General Counsel to access the histories in connection with an investigation into malfeasance. Similarly, USDA confirmed it accessed its employees' browsing histories only when misconduct was suspected or pursuant to an information technology help request from the individual.

Many of these constraints on access to browsing histories were self-imposed, and the agencies likely could have allowed more liberal official access to browsing histories. But that is of limited significance in the circumstances of this case because "FOIA is only directed at requiring agencies to disclose those 'agency records' for which they have chosen to retain possession or control." *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 151–52 (1980).

In addition to considering limitations on the agency's ability to use a document, we also consider as a factor the extent to which the agency *actually* used the requested document. This inquiry considers whether the document has some connection to agency decisionmaking because personnel have read or relied upon it. Actual use is often "'the decisive factor'" when determining whether a requested document is an agency record. *Judicial Watch I*, 646 F.3d at 927 (quoting *Consumer Fed'n*, 455 F.3d at 288); *see also Gallant v. NLRB*, 26 F.3d 168, 172 (D.C. Cir. 1994) (deciding a case primarily based on "[t]he actual use of the correspondence, … and other employees' lack of reliance on the correspondence to carry out the business of the agency"); *BNA*, 742 F.2d at 1490 (similar).

OMB and USDA did not use the officials' browsing histories for any purpose, much less a purpose connected to

agency decisionmaking. *See Judicial Watch I*, 646 F.3d at 927–28.

Cause of Action argues briefly that the agencies "implied" they read these browsing histories, but its only basis for that claim is that other agency employees could have had access to the browsing histories. Cause of Action Br. 28. This assertion conflates two different inquiries—whether the agency has the ability to use a document and whether it actually used the document. The possibility of access is not equivalent to use by the agency. *See Judicial Watch I*, 646 F.3d at 928 ("Although there is no doubt that the FHFA could consult the requested records as it conducts its business, the problem for Judicial Watch is that no one from the FHFA has done so."). Moreover, this kind of speculation about who might have accessed the browsing histories does not defeat summary judgment. *See, e.g.*, *Morris v. McCarthy*, 825 F.3d 658, 674 (D.C. Cir. 2016).

Cause of Action additionally argues that the district court erred by considering only how the agencies used the browsing histories, rather than how the officials used their browsing histories, about which there is little information in the record. The district court, however, was not required to consider the officials' use. The "use" factor refers generally to "the extent to which *agency personnel* have read or relied upon the document." *Burka*, 87 F.3d at 515 (emphasis added). And the "use of the documents by employees other than the author is an important consideration." *BNA*, 742 F.2d at 1493; *see also Gallant*, 26 F.3d at 172.

The declarations from OMB and USDA that their personnel never read or relied on the browsing histories for any reason are sufficient. It was not necessary for the agencies to rule out use of the browsing histories by the officials. *See, e.g.*, *BNA*, 742 F.2d at 1495–96 (describing appointment calendars that were used by the creators of the calendars but nonetheless held not to be agency records). Moreover, Cause of Action has

not offered even a plausible use to which the officials might have put their browsing histories that would be relevant to whether the histories are agency records. Individuals generally use their browsing histories for convenience, often to facilitate revisiting particular webpages. But documents that employees use solely as a matter of convenience are ordinarily not agency records.[4] *See, e.g.*, *id.*; *see also Consumer Fed'n*, 455 F.3d at 291. Indeed, Cause of Action largely conceded the use factor at oral argument. Oral Arg. Tr. 3:20–21 ("[T]hree of the four *Burka* factors cut strongly in favor of agency control."). That the agencies did not actually use the browsing histories for any purpose weighs heavily against a finding that they are agency records.

Finally, we consider "the degree to which the document was integrated into the agency's record system or files." *Burka*, 87 F.3d at 515 (cleaned up). This factor also favors the agencies. As Cause of Action points out, the browsing histories resided on the agencies' systems, which subjected them to at least a modicum of agency control. But many documents are now digitally preserved, and an agency does not necessarily "control" every document found in its digital storage. When

---

[4] It follows that the district court did not abuse its discretion by refusing to authorize discovery. *See Stewart v. Evans*, 351 F.3d 1239, 1245 (D.C. Cir. 2003) (reviewing a district court's denial of discovery for abuse of discretion). "Discovery in FOIA is rare." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006) (cleaned up). "[S]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch II*, 726 F.3d at 215 (cleaned up). The affidavits from the agencies' information specialists indicated that browsing histories are primarily used as a convenience, and nothing in the record calls this into question.

analyzing control for the purposes of FOIA, we consider the extent to which the document is integrated into the agency's record system. *See Judicial Watch II*, 726 F.3d at 220.

Employees of OMB and USDA could freely delete their browsing histories, a practice incompatible with integration of these documents into the agencies' record systems. Moreover, the agencies had no policy of preserving the histories, and in fact routine maintenance or other projects could cause the histories to be deleted. *See* J.A. 78 (explaining that OMB "has not integrated this data into its records management system"); *see also* J.A. 64 ("[T]he USDA neither directly collects browser histories nor stores them in any centralized location in the ordinary course of business."). The browsing histories were generated automatically and were not read or consulted by any agency employee—they were not integrated into the agency's system of records. *Cf. Judicial Watch I*, 646 F.3d at 928 (noting that when "a document [is] created by a third party," and "none of [the agency's] employees have read" it, "the degree [of integration] is none at all").

\* \* \*

In light of the foregoing, we hold that the internet browsing histories requested by Cause of Action are not agency records subject to disclosure under FOIA. The judgment of the district court is thus

*Affirmed.*