# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 2, 2024          Decided July 16, 2024
Reissued August 7, 2024

No. 23-1160

THOMAS SHANDS,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE,
APPELLEE

———

On Appeal from the
United States Tax Court

———

*Stacy D. Blank* argued the cause for appellant. With her on the briefs were *Alexander Olama* and *Avery A. Holloman*.

*Julie Ciamporcero Avetta*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief was *Bruce R. Ellisen*, Attorney.

Before: PILLARD, WALKER and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PAN.

Concurring opinion filed by *Circuit Judge* PILLARD.

PAN, *Circuit Judge*:  The federal government launched a criminal investigation of a tax-evasion scheme in which Swiss bankers and a Swiss bank hid the assets of certain U.S. taxpayers in undisclosed, offshore accounts.  Thomas Shands was a cooperator in the investigation.  He received immunity from prosecution and a whistleblower award of over $8.5 million in exchange for his assistance.  But Shands wanted more.  He claimed that he was entitled to an additional award because the information he provided led to the government's collection of over $2.3 billion through an Internal Revenue Service ("IRS") program that encouraged voluntary disclosures of tax violations.  The IRS denied Shands's claim, and the Tax Court dismissed his petition for review because it determined that it lacked jurisdiction under *Li v. Commissioner*, 22 F.4th 1014 (D.C. Cir. 2022).  Because we agree that Shands failed to carry his burden to establish the Tax Court's jurisdiction, we affirm.

**I.**

**A.**

The IRS rewards individuals who provide information to the agency that results in the collection of tax proceeds.  Such "whistleblowers" are entitled to awards of as much as 30 percent of the money collected if the IRS "proceeds" with an "administrative or judicial action" against a taxpayer based on the whistleblower's information.  26 U.S.C. § 7623(b)(1).[1]  An

---

[1]     Specifically, 26 U.S.C. § 7623(b)(1) provides:

> If the Secretary proceeds with any administrative or judicial action described in subsection (a) [regarding detection of tax violations or underpayments] based on information brought to

award also must be granted if the whistleblower's information results in the collection of tax proceeds in a separate but "related" action against a person who was not identified by the whistleblower. *Id.*[2]

the Secretary's attention by an individual, such individual shall . . . receive as an award at least 15 percent but not more than 30 percent of the proceeds collected as a result of the action (including any related actions) or from any settlement in response to such action . . . .

[2] The Whistleblower Statute does not define "related actions," but the Treasury Department's regulations provide that a related action must be connected to the original action in three ways:

(i) The facts relating to the underpayment of tax or violations of the internal revenue laws by the other person [subject to the related action] are substantially the same as the facts described and documented in the information provided (with respect to the person(s) subject to the original action);

(ii) The IRS proceeds with the action against the other person based on the specific facts described and documented in the information provided [by the whistleblower]; and

(iii) The other, unidentified person is related to the person identified in the information provided [by the whistleblower]. For purposes of this paragraph, an unidentified person is related to the person identified in the information provided if the IRS can identify the unidentified person using the information provided (without first having to use

Whistleblowers who provide information to the IRS may request an award by filing a Form 211 with the Whistleblower Office. *See* 26 C.F.R. § 301.7623-1(c)(1)–(2). The Whistleblower Office then determines whether to reject, deny, or approve the whistleblower claim. The Office *rejects* a claim that is invalid for reasons "relate[d] solely to the whistleblower and the information on the face of the claim that pertains to the whistleblower." *Id.* § 301.7623-3(c)(7). For example, a claim is properly rejected if the Form 211 does not include required information (such as the whistleblower's name or date of birth); or if the whistleblower is ineligible for an award (perhaps because he obtained the information through federal employment). *See id.* § 301.7623-1(b)(2), (c)(2), (c)(4). Thus, a rejection typically occurs without any referral to an IRS operating division for investigation of the claim. By contrast, the Whistleblower Office will *deny* a claim due to an issue that "relates to or implicates [the] taxpayer information" that was provided by the whistleblower. *Id.* § 301.7623-3(c)(8). A denial usually occurs after the Form 211 is referred for investigation and may be appropriate because, for example, "the IRS either did not proceed based on the information provided by the whistleblower . . . or did not collect proceeds." *Id.* Finally, if the Whistleblower Office determines that an award is justified after examining the Form 211 and the results of any associated investigation, it will calculate and pay the award to the whistleblower. *See id.* § 301.7623-3(c)(1)–(6).

A whistleblower may appeal the IRS's "determination regarding [a whistleblower] award" to the Tax Court, which "shall have jurisdiction with respect to such matter." 26 U.S.C.

---

the information provided to identify any other person or having to independently obtain additional information).

26 C.F.R. § 301.7623-2(c)(1).

§ 7623(b)(4) ("Any determination regarding an award under [26 U.S.C. § 7623(b)(1), (2), or (3) — the Whistleblower Statute] may . . . be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)."). We interpreted that jurisdictional provision in *Li v. Commissioner*, 22 F.4th 1014 (D.C. Cir. 2022). There, we held that an appealable "determination regarding an award" does not include a threshold rejection of a whistleblower claim. *Id.* at 1017 (expressly abrogating *Cooper v. Comm'r*, 135 T.C. 70 (2010), and *Lacey v. Comm'r*, 153 T.C. 146 (2019)). We explained that "an award determination by the IRS arises only when the IRS '*proceeds* with any administrative or judicial action . . . based on information brought to the Secretary's attention by [the whistleblower].'" *Id.* (emphasis and final alteration in original) (quoting 26 U.S.C. § 7623(b)(1)). Thus, the Whistleblower Office's rejection of a claim on its face, without referring the information to an IRS operating division, does not constitute an "award determination" because such "[a] threshold rejection of a Form 211 by nature means the IRS is not *proceeding* with an action against the target taxpayer." *Id.* at 1017. And absent an "award determination," there is no Tax Court jurisdiction under § 7623(b)(4). *Id.*

The parties also cite *Lissack v. Commissioner*, in which we explained that, so long as the IRS "proceed[ed] with an administrative action that was based on the information [the whistleblower] brought to the [IRS's] attention," the Tax Court had jurisdiction over the whistleblower's appeal of an award denial. 68 F.4th 1312, 1321 (D.C. Cir. 2023) (cleaned up). In *Lissack*, unlike in *Li*, the Whistleblower Office referred the whistleblower's submission to an operating division of the IRS, which initiated an examination of the issue Lissack identified. *Id.* The fact that the IRS did not collect any proceeds based on the whistleblower's information was a

reason for his claim to fail on the merits — not for lack of jurisdiction. *Id.*

The Supreme Court subsequently vacated *Lissack* on other grounds. *See Lissack v. Comm'r*, __ S. Ct. __, 2024 WL 3259664 (July 2, 2024) (Mem.). It did so because *Lissack* upheld the regulations defining "administrative action" and "related action" under the *Chevron* framework. *See* 68 F.4th at 1322–26 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). The Supreme Court remanded and instructed us to "further consider[]" the case "in light of *Loper Bright Enterprises v. Raimondo*, 603 U.S. __ (2024)," which overruled *Chevron*. *Lissack*, __ S. Ct. __, 2024 WL 3259664; *see Loper Bright Enters.*, 603 U.S. at __. We do not rely on our prior opinion in *Lissack* to resolve this appeal. As discussed *infra*, our reasoning turns on the text of the Whistleblower Statute, which requires that the IRS "proceed" with an action "against any taxpayer," as well as *Li*'s interpretation of the statutory text. *See Li*, 22 F.4th at 1017 (quoting 26 U.S.C. § 7623(b)(1)); 26 U.S.C. § 7623(b)(5). Moreover, the remand proceeding in *Lissack* does not affect our resolution of this appeal because Shands does not question the validity or applicability of the regulations at issue in that case. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) (noting arguments not raised on appeal are forfeited).

**B.**

Thomas Shands asked a banker at UBS, Martin Lack, to open an account for him. Lack (purportedly unbeknownst to Shands) opened a Swiss bank account for Shands at Basler Kantonalbank ("BKB"). Shands did not disclose the account or its assets to the IRS, as required. *See* 31 C.F.R. § 103.24 (2010). When Shands eventually attempted to voluntarily disclose the account, he learned that he was already a subject

of an IRS criminal investigation. In return for criminal immunity, Shands cooperated in the investigation of certain bankers for their use of offshore accounts to hide client assets from the IRS. Shands's cooperation included, among other things, recording telephone calls with Lack and meeting with Lack's colleague, Renzo Gadola, while using a concealed recording device. The government prosecuted Lack and Gadola, and expanded its criminal investigation to encompass BKB, other Swiss banking professionals, and a few U.S. accountholders.

In October 2010, early in his cooperation with the IRS, Shands submitted a Form 211 to claim a whistleblower award. He stated in the form that the relevant information "will become available as a result of my cooperation with the Department of Justice and IRS Criminal Investigation Division in ongoing investigations, including but not limited to cooperation against Martin Lack and Renzo [Gadola]," and that "[i]t is anticipated that such cooperation will result in the identification of U.S. persons who have maintained undeclared offshore financial accounts." J.A. 272. Based on that single Form 211, the IRS created separate claim numbers related to Lack, Gadola, BKB, a handful of other Swiss bankers, and a few of their individual U.S. clients. Shands collected more than $8.5 million in whistleblower awards based on nine claims.

As the Swiss banking investigation developed, the IRS launched the IRS Offshore Voluntary Disclosure Initiative in February 2011 ("OVDI"). The 2011 OVDI, building off a similar 2009 program, incentivized taxpayers to voluntarily disclose offshore accounts and pay past-due taxes, interest, and penalties arising from the previous non-disclosure of those accounts. *See* I.R.S. News Release IR-2011-14 (Feb. 8, 2011). In a typical OVDI case, a taxpayer could disclose offshore

accounts for tax years 2003 to 2010; file corrected tax returns; and pay all taxes, interest, and penalties calculated under the OVDI's uniform penalty structure. Such voluntary disclosures usually would not lead the IRS to conduct an "examination," that is, a formal audit, *see* IRS, *The Examination (Audit) Process*, FS-2006-10 (Jan. 2006), available at https://perma.cc/6PBM-873W. Instead, an examiner would review a voluntary disclosure only to certify its accuracy and completeness, and the IRS and taxpayer then would sign a "Closing Agreement" to resolve the tax liability for the relevant years. Nevertheless, the IRS reserved the right to conduct an examination following a voluntary disclosure, and a taxpayer's participation in the OVDI did not provide criminal immunity even though it greatly reduced the risk of prosecution. By 2015, the IRS had collected over $2.3 billion in taxes, interest, and penalties through the OVDI.

In June 2012, Shands sent a letter to the IRS requesting an additional claim number so that he could apply for a whistleblower award based on the money collected by the IRS through the 2011 OVDI. Shands's OVDI claim relied on his role in the successful prosecutions of Gadola and Lack. According to Shands, he was entitled to a whistleblower award because the OVDI is an "administrative or judicial action" or a "related action[]" that was "based on" the information he provided about Gadola and Lack. *See* 26 U.S.C. § 7623(b)(1). He noted that prosecutors stated at Gadola's sentencing that "Gadola's guilty plea as well as the very public nature of his cooperation in the prosecution of Martin Lack and Christos Bagios has been of great benefit to the IRS as it has spurred U.S. taxpayers to enter into the [OVDI] program." J.A. 302.

Shands also claims credit for BKB's cooperation with the government and entry into a deferred prosecution agreement in 2018. As noted in that agreement, BKB's cooperation included

disclosing information regarding illegal offshore accounts and "[c]onducting extensive outreach to former U.S. customers in order to encourage their participation in IRS-sponsored voluntary disclosure programs." J.A. 387, 389.

Thus, Shands asserted that the success of the OVDI was attributable to the prosecutions of Gadola and Lack (and, later, BKB), and those prosecutions depended on the information that he had provided. Although Shands's position on the amount of the requested award has not been consistent, he at times has sought between 15 and 30 percent of the entire $2.3 billion that the IRS collected through the OVDI. *See* J.A. 244 (letter from Shands attorney to IRS stating "Shands is entitled to an award on the roughly two billion dollars collected as a result of the 2011 [OVDI]"); *id.* at 320 (Whistleblower Office analyst stating that Shands is "seeking an award on the billions of dollars recovered from [the OVDI]").

An analyst in the Whistleblower Office reviewed Shands's OVDI claim. The analyst recommended denying the claim without referring it to another division for investigation. According to the analyst, "[t]he strongest reason to deny this OVDI claim . . . is because unidentified taxpayers who entered the February 2011 OVDI program clearly do not meet the definition of 'related action.'" J.A. 321. Furthermore, "the information provided [about Lack, Gadola, and BKB] established no valid link or relationship to the OVDI program." *Id.* at 322. The analyst explained that the "unusual nature" of Shands's case justified a denial of the OVDI claim without referring the matter to an IRS operating division. *Id.* at 320. Based on that recommendation, the IRS made a preliminary decision to deny Shands's OVDI claim. The agency then gave Shands an opportunity to submit comments before sending him a final denial letter. The final letter "den[ied]" his claim and explained that "the IRS took no action based on the

information that you provided with respect to [the OVDI]," and that "this OVDI program and these taxpayers are not valid related actions to your Whistleblower claim." *Id.* at 48.

Shands filed a petition for review in the Tax Court to challenge the denial of his OVDI claim. While cross-motions for summary judgment were pending in the Tax Court, we issued our opinion in *Li v. Commissioner*. The government moved to dismiss the petition for lack of jurisdiction under *Li*, and the Tax Court granted the motion. The Tax Court reasoned that because each OVDI case is triggered by a taxpayer's voluntary disclosure, no individual OVDI case is a "civil or criminal proceeding against any person." *Shands v. Comm'r*, 160 T.C. No. 5, No. 13499-16W, 2023 WL 2399912, at *4 (Mar. 8, 2023). Thus, an OVDI case does not fall under the applicable regulatory definition of "administrative action" or "judicial action," and cannot provide a basis for jurisdiction under *Li*. *Id.* The Tax Court also concluded that OVDI cases cannot be "related actions" because any related action must be an "administrative action" or "judicial action" under the regulatory definitions of those terms. *See id.* Shands timely appealed.

**II.**

We generally review Tax Court decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a)(1). Our jurisdiction over the merits of Shands's claim, if any, comes from 26 U.S.C. § 7482(a)(1) and "is predicated upon the Tax Court having jurisdiction." *Li*, 22 F.4th at 1015. We consider the jurisdictional question *de novo*. *Myers v. Comm'r*, 928 F.3d 1025, 1031 (D.C. Cir. 2019). Shands has the burden to establish jurisdiction because he is the party asserting it. *See*

*Cause of Action Inst. v. Off. of Mgmt. & Budget*, 10 F.4th 849, 854 (D.C. Cir. 2021); *Le v. Comm'r*, 114 T.C. 268, 270 (2000).

## III.

### A.

Under *Li*, Tax Court jurisdiction "arises only when the IRS '*proceeds* with any administrative or judicial action . . . based on information brought to the Secretary's attention by [the whistleblower].'" *Li*, 22 F.4th at 1017 (emphasis and final alteration in original) (quoting 26 U.S.C. § 7623(b)(1)). And the relevant portion of the Whistleblower Statute — including the jurisdictional provision at issue here — applies only to actions "*against* any taxpayer." 26 U.S.C. § 7623(b)(5) (emphasis added). Applying that standard, we must decide in this case whether the OVDI cases that allegedly flowed from Shands's cooperation entailed the IRS "proceed[ing]" with some "administrative or judicial action" that was "against any taxpayer." *Id.*; *Li*, 22 F.4th at 1017. Shands argues that "OVDI proceedings are administrative actions, and the IRS did take action with respect to the U.S. Clients [of Lack, Gadola, and BKB] who participated in the 2011 OVDI program." Shands Br. 26. We disagree.

OVDI cases do not generally give rise to Tax Court jurisdiction because they typically are not "against" any taxpayer. Rather, a taxpayer who participates in the OVDI chooses to disclose overseas accounts; calculates the taxes, interest, and penalties associated with the voluntary disclosure; and then pays the amount that is owed. That process is initiated and directed by the taxpayer. It therefore cannot be fairly characterized as the *IRS* proceeding with an action *against the taxpayer*. *See Li*, 22 F.4th at 1017. Indeed, the defining features of the OVDI program are the taxpayer's *voluntary* disclosures and payments: The OVDI thus bears no

resemblance to the IRS-driven actions that are listed as examples of "administrative actions" in the applicable regulation, *see* 26 C.F.R. § 301.7623-2(a)(2) (citing as examples "an examination, a collection proceeding, a status determination proceeding, or a criminal investigation").

Shands contends that OVDI cases confer jurisdiction because they are "administrative proceedings established and supervised by the IRS for the specific purpose of collecting proceeds." Shands Br. 37. But that description, even if accurate, falls outside the bounds of an "administrative action" under the law because "proceedings established and supervised by the IRS" do not necessarily involve an action *against* any person. In fact, the normal procedure for paying income taxes is an administrative process "established and supervised by the IRS for the specific purpose of collecting proceeds," *id.*, but that routine process is not generally viewed as the IRS taking an "action" that is "against" the millions of Americans who file their tax returns every year. *See Am. Forest & Paper Ass'n v. FERC*, 550 F.3d 1179, 1182 (D.C. Cir. 2008) ("[T]he words of statutes . . . should be interpreted where possible in their ordinary, everyday senses." (second alteration in original) (quoting *Malat v. Riddell*, 383 U.S. 569, 571 (1966)).

We acknowledge that OVDI cases or other voluntary-disclosure programs could lead to administrative or judicial actions that might justify a whistleblower award under circumstances not at issue here. For example, a voluntary disclosure through the OVDI could result in an examination (that is, an audit) of the taxpayer by the IRS, which would be an administrative action by the agency against that taxpayer. *See* 26 C.F.R. § 301.7623-2(a)(2). Shands, however, argues only that OVDI cases themselves — *i.e.*, the taxpayer's voluntary disclosure of assets and payment of taxes, interest,

and penalties — are "administrative actions."  That claim falls short.

Because Shands does not demonstrate that the IRS "proceed[ed]" with any "administrative or judicial action" that was "against" any taxpayer who participated in the OVDI — regardless of whether any such taxpayer was spurred to action by his cooperation in the Swiss banking scheme — he fails to carry his burden to establish jurisdiction.  *See Li*, 22 F.4th at 1017.

**B.**

We find Shands's contrary arguments unpersuasive.  He first contends that *Li* governs only rejections, not denials.  In Shands's view, the fact that the IRS stated in its final letter to him that it *denied* rather than *rejected* his claim distinguishes this case from *Li* and establishes Tax Court jurisdiction.  *See Li*, 22 F.4th at 1017.  But *Li*'s jurisdictional rule does not turn on whether the IRS labeled its decision a "rejection" or a "denial."  Jurisdiction is a creation of statute, *see Owens v. Republic of Sudan*, 531 F.3d 884, 887 (D.C. Cir. 2008), and the statutory grant of jurisdiction over "determination[s] regarding [a whistleblower] award" does not mention "rejections" or contrast them with "denials."  *See* 26 U.S.C. § 7623(b)(4).  Instead, our jurisdictional inquiry focuses on what the IRS *did* — *i.e.*, whether it "*proceed[ed]* with any administrative or judicial action," *Li*, 22 F.4th at 1017 (emphasis in original) (quoting 26 U.S.C. § 7623(b)(1)) — and not on the words used by the agency in a letter to the whistleblower.  Here, for the reasons already explained, Shands has not demonstrated that the IRS "proceed[ed]" with any action against OVDI participants.

Shands next reasons that the Tax Court had jurisdiction because a taxpayer's voluntary disclosure under the OVDI

sometimes can lead to the IRS "proceed[ing]" with an "administrative action." He cites a GAO report and prior Tax Court cases that have suggested that the IRS has or can provide whistleblower awards despite voluntary disclosure by the subject-taxpayer, as well as the IRS's apparent agreement that such a scenario is possible. But as we have already explained, the mere possibility that an OVDI case could evolve into an "administrative action" taken by the IRS against a taxpayer does not provide a basis for jurisdiction where no such evolution has been identified. Shands does not, for example, point to any taxpayer who participated in the OVDI as a result of Shands's cooperation and then faced an audit that was triggered by the OVDI disclosure.

Shands blames the IRS for his failure to cite any specific OVDI-related administrative action that arose from his cooperation. He highlights the Tax Court's denial of his motion to compel the IRS to turn over information identifying all taxpayers who participated in the OVDI program — a ruling that assertedly prevented him from identifying actions taken by the IRS against OVDI participants. Shands claims that disclosure of the information he sought might have revealed "the extent to which the IRS relied on information provided by Shands in . . . OVDI proceedings [and] whether the IRS conducted a full examination of any U.S. Client who applied for OVDI." Reply Br. 14. But Shands made no mention of the discovery motion in his opening brief, and "[a]rguments raised for the first time in a reply brief are forfeited." *Fore River Residents Against the Compressor Station v. FERC*, 77 F.4th 882, 889 (D.C. Cir. 2023). In any event, Shands's motion to compel sought the disclosure of extensive records pertaining to *all* OVDI participants, without tailoring his request to the information relevant to the jurisdictional inquiry — *i.e.*, whether the IRS took action against any of the participants in response to their voluntary disclosures. The Tax Court thus did

not abuse its discretion in denying such a motion. *See In re Sealed Case (Med. Recs.)*, 381 F.3d 1205, 1211 (D.C. Cir. 2004) ("We review a district court's discovery rulings for abuse of discretion."); 26 U.S.C. § 7482(a)(1) (instructing courts to "review the decisions of the Tax Court . . . in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury").

Finally, we take no position on an alternative theory of jurisdiction that Shands declined to raise. *See United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497 (D.C. Cir. 2004) (noting that we generally do not reach arguments that parties fail to make on appeal); *Bronner on Behalf of Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 611 (D.C. Cir. 2020) (explaining that arguments in favor of jurisdiction can be waived). Shands has expressly disavowed the potentially meritorious argument that the IRS "proceeded" with the original actions (against Lack, Gadola, and BKB), and that those actions are sufficient to establish jurisdiction over an asserted related-action claim (involving the OVDI program). When asked at oral argument if treating the OVDI claim as an asserted related action provided an alternative theory of jurisdiction, counsel for Shands responded: "I would not say that it's an alternative theory. I think that the related action addresses the concern that the government raised that the participants in the OVDI proceedings were not specifically identified." Oral Arg. at 2:45–3:10. And when the court later suggested that the original actions, distinct from the purportedly related action, could be relevant to jurisdiction, counsel stated: "It would seem to be a very strange state of affairs where the taxpayer could rely on the overarching action to get into court, but then say no action was taken with respect to me for purposes of the merits." *Id.* at 29:00–29:20; *see also id.* at 31:09–31:22 ("I'm not sure that the jurisdictional section or *Li* would support . . . splitting actions into one for

jurisdiction and one for merits."). Shands thus has waived any reliance on the original actions against Lack, Gadola, and BKB as a basis for jurisdiction over the OVDI claim.

Shands devotes a significant portion of his briefing to explaining why certain OVDI cases were "related actions to the original actions against the Swiss bankers and BKB." Shands Br. 39. As explained, Shands does not offer this analysis as an alternative theory of jurisdiction, but instead as a merits argument regarding his entitlement to an award. We do not reach his merits arguments because he has failed to establish the Tax Court's jurisdiction over his OVDI claim.

\* \* \*

For the foregoing reasons, Shands has not carried his burden to establish the Tax Court's jurisdiction over his OVDI claim under 26 U.S.C. § 7623(b)(4). We therefore affirm the Tax Court's dismissal of his petition for review.

*So ordered.*

PILLARD, *Circuit Judge*, concurring: I agree with the majority's treatment of the sole argument in favor of jurisdiction that Thomas Shands pressed on appeal, which fails under our decision in *Li v. Commissioner*, 22 F.4th 1014, 1017 (D.C. Cir. 2022). The Tax Court has jurisdiction to hear appeals of "[a]ny determination regarding an award" under the whistleblower statute. 26 U.S.C. § 7623(b)(4). We held in *Li* that the Internal Revenue Service only makes such an appealable determination if it "'*proceeds* with any administrative or judicial action' . . . against the target taxpayer" identified by the whistleblower. *Li*, 22 F.4th at 1017 (emphasis in original) (quoting 26 U.S.C. § 7623(b)(1)).

Shands argued that his cooperation in the investigation against the Swiss bankers Renzo Gadola and Martin Lack led to their well-publicized guilty pleas, which spurred U.S. clients of those bankers and their conspirators to come forward and disclose their tax violations to the Service through the 2011 Offshore Voluntary Disclosure Initiative (OVDI). Shands sought a whistleblower award on the proceeds collected from those clients' voluntary disclosures. He argued that the Service took action against those OVDI participants, so the Tax Court had jurisdiction over his claim. But he failed to demonstrate that the Service's process of collecting from those self-reported nonpayers rose to the level of "administrative or judicial action[s]," such as audits or prosecutions. 26 U.S.C. § 7623(b)(1). He therefore did not satisfy the jurisdictional requirement set out in *Li*—that he show the Service proceeded with administrative or judicial action against the target taxpayers. 22 F.4th at 1017.

I write separately to provide further context for our holding. The rule set out by *Li* is not a demanding one. It simply requires the appellant to establish that the IRS took some enforcement action. That rule reflects the Tax Court's lack of jurisdiction over appeals from a decision by the Service not to pursue a putative whistleblower's tip.

A closer look at *Li* itself reveals its limits. Li filed an application for a whistleblower award, alleging that a target taxpayer underpaid taxes by, among other things, falsely claiming dependent children and alimony payments. *See* Order and Decision, *Li v. Comm'r*, No. 5070-19W (T.C. Apr. 6, 2020). The Whistleblower Office reviewed the allegations and the target taxpayer's returns but declined to forward Li's information to a Service examiner for any potential action, so no action was taken; the Office simply rejected Li's award application. *Li*, 22 F.4th at 1015. Li's petition for Tax Court review was not an "appeal of [an] award determination," 26 U.S.C. § 7623(b)(4), but an attempt to appeal the Service's non-enforcement decision: She argued that the Service did not adequately consider the evidence she submitted and should have proceeded with action against the target taxpayer. *See generally* Brief for Appellant, *Li*, 22 F.4th 1014 (No. 20-1245). The Tax Court lacks jurisdiction over such a non-enforcement decision, as do we.

*Li* erected no novel or formidable obstacle to the Tax Court's jurisdiction. Congress endowed the Tax Court with jurisdiction over appeals of "award determination[s]," 26 U.S.C. § 7623(b)(4)—not exercises of non-enforcement discretion. Our decision in *Li* that the Tax Court lacked jurisdiction over that appeal reflects the "general unsuitability for judicial review of agency decisions to refuse enforcement." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). In keeping with the strong presumption against treating statutory preconditions to relief as jurisdictional, we did not read into the whistleblower statute any unusual jurisdictional threshold. *See MOAC Mall Holdings v. Transform Holdco LLC*, 598 U.S. 288, 297 (2023). We have continued to honor the terms of the whistleblower statute's jurisdictional grant, which "ma[k]e[s] generous provision for judicial review of Whistleblower Office award decisions." *Lissack v. Comm'r*, 68 F.4th 1312, 1320

(D.C. Cir. 2023), *vacated on other grounds*, __ S. Ct. __, 2024 WL 3259664 (mem.) (July 2, 2024).

Our conclusion that the Tax Court lacked jurisdiction over Mr. Shands's appeal is not to the contrary but reflects his case-specific litigation strategy. As the opinion for the court describes, Shands asserted the Tax Court had jurisdiction because the OVDI is an "administrative or judicial action," Op. 8, but that argument lacks merit, *id*. at 11-13. He also asserted that the OVDI was a "related action" that was "based on" the information he provided about the Swiss bankers. The "related action" inquiry goes not to jurisdiction, however, but to a claimant's entitlement to relief.

Recall the whistleblower statute's directive:

If the Secretary proceeds with any administrative or judicial action . . . based on information brought to the Secretary's attention by an individual, such individual shall . . . receive as an award at least 15 percent but not more than 30 percent of the proceeds collected as a result of the action (including any related actions) . . . .

26 U.S.C. § 7623(b)(1). The statute does not define "related actions," but the relevant regulations, unchallenged in this appeal, explain that a "related action" is "an action against a person other than the person(s) identified in the information provided and subject to the original action(s)" that has specified factual ties to the original action. 26 C.F.R. § 301.7623-2(c)(1) (2014). Shands urges that the OVDI proceedings constitute such "related actions" to the original actions against the Swiss bankers. Whether he is right on that point cannot help him clear the jurisdictional hurdle, however, because whether the OVDI proceedings could ultimately

qualify as "related actions" goes not to jurisdiction, but to the merits.

There is an argument in a case like this one that could support the Tax Court's jurisdiction over such a related-action claim. For starters, the Service clearly proceeded with judicial actions based on Shands's information: It referred for prosecution the individuals against whom Shands cooperated, including Swiss bankers Gadola and Lack. That is why the Service has already awarded Shands over $8.5 million. The same judicial actions could have supported Tax Court jurisdiction over any appeal regarding an award determination involving Shands's claims for proceeds collected "as a result" of those actions against the Swiss bankers or "any related actions." 26 U.S.C. § 7623(b)(1).

But Shands did not contend that the Tax Court's jurisdiction over his putative related-action claim stems from the Service's actions against the Swiss bankers. Instead, as our opinion notes, his counsel affirmatively and repeatedly disavowed that theory of jurisdiction. Op. 15-16. He therefore forfeited the point. *See Int'l Longshore & Warehouse Union v. NLRB*, 971 F.3d 356, 363 (D.C. Cir. 2020).